1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SANDRA FAYE NUNES, | ) | Case No.: 1:19-cv-01741-BAM |
| Plaintiff, | ) | |
| | ) | **ORDER REGARDING SOCIAL SECURITY** |
| v. | ) | **COMPLAINT** |
| | ) | |
| KILOLO KIJAKAZI, Acting Commissioner of | ) | |
| Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>INTRODUCTION</u>

Plaintiff Sandra Faye Nunes ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[2]

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.
[2] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). (Docs. 9, 13, 18.)

Having considered the briefing and record in this matter, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards.  Accordingly, this Court affirms the agency's determination to deny benefits.

## **FACTS AND PRIOR PROCEEDINGS**

Plaintiff filed an application for disability insurance benefits on April 14, 2016.  AR 184-86.[3] Plaintiff alleged that she became disabled on April 1, 2014, due to rheumatoid arthritis, chronic migraines, fibromyalgia, back pain, joint pain, pain in knees, hands, fingers and elbows and foot pain with weightbearing.  AR 184, 221.  Plaintiff's application was denied initially and on reconsideration. AR 118-21, 123-27.  Subsequently, Plaintiff requested a hearing before an ALJ.  ALJ Ruxana Meyer held a hearing on August 1, 2018.  AR 45-74.  ALJ Meyer issued an order denying benefits on November 21, 2018.  AR 20-39.  Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision.  AR 6-10.  This appeal followed.

### **Hearing Testimony**

The ALJ held a hearing on August 1, 2018, by video conference.  Plaintiff appeared at the hearing by video with her attorney, Jonathan Pena.   AR 47.  John J. Komar, an impartial vocational expert, also appeared and testified.  AR 47.

In response to questions from the ALJ, Plaintiff testified that she lives with her husband.  She graduated from high school, attended junior college and received an Associate of Science in nursing. She worked as a registered nurse for sixteen years and renewed her nursing credentials in March 2018. AR 50-51.

Plaintiff testified that she had surgery on her right hand two or three years prior to the hearing. The surgery helped and she no longer wears a brace, but she tends to hold things in her left hand if she will hold them for a long time.  She is able to drive but sitting for more than 45 minutes to 1 hour causes her back pain with pain down her left leg.  She gets a nerve block every six to nine months to

---

[3]     References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

help with her back pain.  She also takes pain and nerve medicine.  After the nerve block injections, she is usually on bed rest for a couple of days, but then she is fine.  Her pain medicine makes her drowsy, so she does not drive when she is taking it.  If she takes the pain medicine for too long or takes too much, it will cause nausea and vomiting.  AR 52-54.

Plaintiff testified that she was let go from her job.  She was looking for employment, but then needed to have a knee replacement because of arthritis.  She has fibromyalgia and rheumatoid arthritis, with joint problems and back problems.  In 2015, after the knee replacement, she had her bariatric surgery reversed because of a mass in her stomach.  She received a gastric sleeve about a year before the hearing.  AR 55-56.

Plaintiff testified that she mainly cannot work because of her rheumatoid arthritis and back pain.  She is not currently taking medications for her rheumatoid arthritis as she is in the process of getting a new rheumatologist.  She also has chronic migraines two or three times a month.  She takes medication at the onset of her migraines.  AR 56-57.

Plaintiff also reported that she uses a cane when her knees "get really bad."  AR 56.  She had arthroscopic surgery on her left knee, along with her right knee replacement.  When she had knee replacement on her right knee, her doctor told her that she also needed a knee replacement on her left knee, but she has not had it yet.  AR 58.  Her right knee swells sometimes, and her left knee is permanently swollen.  At times, her left knee will swell two to three times its normal size.  She has to elevate it most nights.  It is stiff when she first starts walking and she limps on it quite a bit.  AR 58-59.

In response to questions from her attorney, Plaintiff clarified that she had surgery on her right knee in 2014.  The advanced degenerative joint disease in her right knee will always be present because of her rheumatoid arthritis.  AR 59.  During a typical day, she has to elevate her legs above waist level to help with the swelling.  She estimated that she probably spends eight plus hours with one of her legs elevated during an average day.  AR 61

When asked about her migraines, Plaintiff testified that they are probably at her worst level and are compounded with everything else.  Her migraines typically last three to four days.  During that time, she is in bed or going to the doctor for treatment.  A lot of times she ends up in the emergency

room, getting injections for nausea, vomiting and pain.  She feels most comfortable in bed, in a dark, cold room, with no noise and no lights.  AR 60-61.

When asked about her daily activities, Plaintiff testified that on a typical day, she might dust for 20 minutes and then sit down and rest.  She can sit in a chair with a back for about 30 to 45 minutes before she feels pain in her lower back down her left leg.  She can sit on a chair with no back for about 15 minutes.  She can walk past three houses and back without having to rest.  She walks much slower than before because she cannot bend her knees as much.  She can lift and carry about 15 pounds.  She can write for about 25 to 30 minutes with a 30-minute break.  AR 61-64.

When asked about her rheumatoid arthritis, Plaintiff testified that it is in her hands, knees, hips, feet and wrists.  She will get flare ups once or twice a month.  Her hands, knees and feet hurt every day.  She also will have flare ups when the weather changes that will put her in bed for a day or two. AR 64-65.

Following Plaintiff's testimony, the ALJ elicited testimony from the VE.  The VE categorized Plaintiff's past work as a registered nurse.  The ALJ also asked the VE hypotheticals.  For each of the hypotheticals, the ALJ asked the VE to assume an individual with the same age, education and work experience as Plaintiff.  For the first hypothetical, the ALJ asked the VE to assume an individual that could perform work at the light exertional level defined as standing and walking six out of eight hours a day, lifting twenty pounds occasionally, lifting or carrying ten pounds frequently.  This individual could engage in frequent reaching, frequent gross and fine manipulation, frequent stooping, occasional ramps and stairs, occasional kneeling, crouching and crawling and no ladders ropes or scaffolds.  The VE confirmed that Plaintiff's past work would be exceeded by the exertional level.  The VE testified that there would be other work that the individual could perform, such as housekeeping-cleaner, sample distributor, and ticket seller.  AR 67-68.

For the second hypothetical, the ALJ asked the VE to assume the same limitations as the first hypothetical, but the individual could stand and walk four out of eight hours a day.  The VE testified that the person would not be able to do the cited jobs, but this person could work as an order caller, ticket taker in a movie theater setting, and silver wrapper.  The VE indicated that based on his

experience as a vocational rehab counselor, each of these jobs could be performed either sitting or standing or in a combination of the two.  AR 68-69.

For the third hypothetical, the ALJ asked the VE to consider the same limitations as hypothetical two, but the person would be off task 10% of the workday for lower extremity elevation. The VE testified that there would be no jobs.  AR 69.

Following the ALJ's questions, Plaintiff's attorney asked the VE to clarify whether the identified jobs were on benches when in a seated position.  AR 71.  The VE indicated that there would be other forms of seats.  The ticket taker job could be done entirely standing or entirely sitting and the silver wrapper is usually sitting behind a table, but can stand, as well as sitting or standing.  AR 71.

For the next hypothetical, Plaintiff's counsel asked the VE to consider an individual who requires seating to have a full back and has limitations to the right upper extremity for both gross and fine manipulation to occasional.  This individual is right-hand dominant.  Additionally, the individual would need "the ability to sit and stand . . . the frequency going to be every 30 minutes and in the seated position and if standing for more than 15 minutes would then need to alternate to the seated position."  AR 71.  This individual also could not stoop.  The VE testified that this individual could not perform Plaintiff's past work or any other light work.  AR 71-72.

For the next hypothetical, Plaintiff's counsel asked the VE to consider the same limitations as in hypothetical one and the individual would be absent at least three days in an average month due to migraines.  The VE testified that this limitation would preclude all employment.  AR 72.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act prior to February 23, 2018, but became disabled on that date and continued to be disabled through the date of the decision.  AR 20-39.  Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 1, 2014, the alleged onset date. AR 26.  The ALJ identified the following severe impairments:

degenerative joint disorder of the bilateral knees, status post right knee diagnostic arthroscopy with meniscectomy and "chrondoplasty;" right de Quervain's tenosynovitis, status post tenesynovectomy, obesity with history of gastric obstructions, status-post reversal of remote gastric sleeve and lysis of adhesion.  AR 26-30.  The ALJ determined that the severity of Plaintiff's impairments did not meet or equal any of the listed impairments.  AR 30.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform work as follows:  lift 20 pounds occasionally; lift and carry 10 pounds frequently; standing and walking four hours out of eight hours in a workday; occasionally climbing ramps and stairs, kneeling, crouching, and crawling; frequently stooping; frequent gross and fine manipulation; and precluded from work climbing ladders, ropes, and scaffolds.  AR 30-36.  With this RFC, the ALJ found that prior to February 23, 2018, the date Plaintiff's age category changed, there were jobs available in the national economy that the Plaintiff could perform, such as order caller, ticket taker in a movie theater and silver wrapper.  AR 37-38.  Beginning on February 23, 2018, there were no jobs that existed in the national economy that Plaintiff could perform.  AR 38-39.  The ALJ therefore concluded that Plaintiff was not disabled prior to February 23, 2018, but she became disabled on that date and continued to be disabled through the date of the decision.  AR 39.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's

determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION[4]

Plaintiff contends that the ALJ committed harmful error by failing to find her chronic migraines, rheumatoid arthritis and degenerative disc disease of the lumbar spine non-severe at step two of the sequential evaluation.  Plaintiff further contends that the RFC is not supported by substantial evidence because it fails to account for the limitations resulting from her chronic migraines, rheumatoid arthritis and degenerative disc disease.  As a final matter, Plaintiff contends that the ALJ committed harmful error by failing to provide clear and convincing reasons to discount her pain and symptom testimony.

### A.  Step Two Impairments

Plaintiff argues that the ALJ committed harmful error by finding her impairments of chronic migraines, rheumatoid arthritis and degenerative disc disease of the lumbar spine non-severe.

---

[4]     The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

7

At step two of the five-step sequential evaluation, the ALJ is required to determine whether a plaintiff has a "severe" medical impairment or combination of impairments. 20 C.F.R. § 404.1520(c). An impairment, or combination of impairments, can be found to be non-severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. *See* SSR 85–28, 1985 WL 56856 (Jan. 1, 1985); *see also Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir.1988) (adopting SSR 85–28). The mere existence of an impairment is insufficient proof of a disability." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir.1993). A claimant bears the burden of proving that an impairment is disabling. *Id.* (citation omitted).

"Step two is merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017), citing *Bowen v. Yuckert*, 482 U.S. 137, 146–47 (1987). "It is not meant to identify the impairments that should be taken into account when determining the RFC . . . . The RFC . . . *should* be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Id.* (emphasis in original). Any error in failing to include an impairment at step two is harmless if the ALJ considered any limitations imposed by the impairment in the RFC determination at step four. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) ("The decision reflects that the ALJ considered any limitations posed by the bursitis at Step 4. As such, any error that the ALJ made in failing to include the bursitis at Step 2 was harmless.").

Here, at step two of the sequential evaluation, the ALJ found that Plaintiff's chronic migraines, rheumatoid arthritis, and degenerative disc disease of the lumbar spine were non-severe impairments based on mild or unremarkable clinical findings. AR 26-27. Plaintiff argues that the ALJ erred by ignoring substantial evidence of record establishing that these impairments more than minimally limited her ability to sustain work activity and were severe. (Doc. 17 at 23-32.)

The parties expend extensive briefing to argue the severity (or non-severity) of Plaintiff's impairments at step two of the sequential evaluation. However, even assuming *arguendo* that the ALJ erred in finding Plaintiff's chronic migraines, rheumatoid arthritis, and degenerative disc disease of the lumbar spine not severe at step two, any such error is harmless because the ALJ considered these impairments at step four of the sequential evaluation. According to the record, the ALJ expressly considered Plaintiff's subjective complaints of migraines, rheumatoid arthritis and low back pain. AR

31.  At step four, the ALJ also implicitly considered Plaintiff's migraines, rheumatoid arthritis and degenerative disc disease of the lumbar spine when assessing the medical opinion evidence.  In particular, the ALJ discussed the functional capacity opinions of the state agency physicians, who found Plaintiff's impairments of fibromyalgia, dysfunction of major joints, spine disorders, migraine, disorders of muscle, ligament and fascia to be severe impairments.  AR 35-36, 87, 108.  On initial review, the state agency physician determined that Plaintiff could lift/carry 20 pounds occasionally, 10 pounds frequently, stand/walk about 6 hours in an 8-hour workday, sit more than 6 hours on a sustained basis in an 8-hour workday, frequently climb ramps/stairs and balance, occasionally climb ladders/ropes/scaffolds, stoop, kneel, crouch and crawl.  AR 90.  On reconsideration, a separate state agency physician determined that Plaintiff could lift/carry 20 pounds occasionally, 10 pounds frequently, stand/walk about 6 hours in an 8-hour workday, sit more than 6 hours on a sustained basis in an 8-hour workday, occasionally climb ramps/stairs, ladders/ropes/scaffolds, occasionally stoop, kneel, crouch and crawl and balance without limitation.  AR 110-11.  The ALJ assigned great weight to the state agency physician's opinions.  AR 35.  Plaintiff has not challenged the ALJ's assessment of these opinions.

With respect to Plaintiff's rheumatoid arthritis and degenerative disc disease, the ALJ also considered evidence from the consultative examiner, Dr. Roger Wagner.  AR 34-35.  According to the record, Dr. Wagner conducted an examination of Plaintiff on July 12, 2016, and expressly considered Plaintiff's "history of rheumatoid arthritis" and x-rays showing "degenerative disc disease."  AR 825.  Upon observation, Plaintiff was "easily able to get up and out of the chair in the waiting room," "easily able to get on and off the exam table, "easily able to bend over at the waist and take shoes and socks off and put them back on without difficulty," and "able to bend over from a standing position to pick up a shoe from off the ground."  AR 826-27.  Upon examination, Plaintiff was able to walk on toes and heels, with a normal station and normal gait.  AR 828.  Her straight leg raising was negative in both seated and supine positions.  Her left knee had no redness, heat, swelling, tenderness, effusion, ligamentous laxity, or crepitus and her right knee had "some very minimal warmth" and "very mild tenderness."  AR 829.  Her motor strength was 5/5 in the bilateral upper and lower extremities "with the exception of right hand grip strength which [was] 4+/5."  AR 829.  Dr. Wagner confirmed that

9

Plaintiff had been diagnosed with rheumatoid arthritis, but "had minimal findings in the hands other than some mild thumb carpometacarpal joint discomfort." AR 829. With respect to her low back pain, Dr. Wagner indicated that it appeared "most consistent with musculoligamentous strain." AR 829. She also had "some bilateral meralgia paresthetica which [was] improved with rhizotomies." AR 829. Based on the objective findings, Dr. Wagner opined that Plaintiff could stand/walk up to four hours, sit up to six hours, lift and carry 20 pounds occasionally and 10 pounds frequently "given the problems with the knees, total knee arthroplasty, and the diagnosis of rheumatoid arthritis," occasionally climb, kneel, crouch and crawl, occasionally stoop, and frequently perform manipulative activities. AR 829-30. The ALJ assigned "great weight" to Dr. Wagner's opinion. AR 35. Plaintiff has not challenged the ALJ's assessment of Dr. Wagner's opinion.

Based on the foregoing, the Court finds that any error at step two is harmless because the ALJ considered any limitations imposed by Plaintiff's chronic migraines, rheumatoid arthritis, and degenerative disc disease of the lumbar spine at step four of the sequential evaluation.

**B. RFC**

Insofar as Plaintiff argues that the RFC is not supported by substantial evidence because it fails to account for the limitations resulting from her chronic migraines, rheumatoid arthritis and degenerative disc disease, this argument lacks merit. As noted above, Plaintiff has not challenged the ALJ's assignment of great weight to the opinion of Dr. Wagner, who conducted an independent examination of Plaintiff and considered any limitations imposed by her rheumatoid arthritis and degenerative disc disease of the lumbar spine. The consultative examiner's opinion alone serves as substantial evidence because it rests on his own independent examination of Plaintiff. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (finding consultative examiner's opinion alone constituted substantial evidence supporting the ALJ's findings with respect to claimant's physical impairment and exertional limitations because it rested on the examiner's own independent examination of the claimant).

Plaintiff also has not challenged the ALJ's assignment of great weight to the opinions of the state agency physicians, both of whom considered Plaintiff's chronic migraines, along with her other physical impairments. The opinion of a non-examining physician, such as a state agency physician,

may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).  The state agency physicians' opinions were arguably consistent with the independent clinical findings of Dr. Wagner, including Plaintiff's ability to easily get up and out of the chair in the waiting room, get on and off the exam table, bend over at the waist, bend over from a standing position, along with her ability to walk on toes and heels, with a normal station and normal gait, negative straight leg raising, only minimal findings with respect to her right knee, and 5/5 motor strength in the bilateral upper and lower extremities except for her right hand grip strength.  AR 826-29.

Although claiming additional limitations from her chronic migraines, rheumatoid arthritis and degenerative disc disease, Plaintiff failed to identify or submit any medical opinions from a treating or examining physician as to her functional limitations resulting from those impairments.  The burden is on the claimant to establish disability. *Terry*, 903 F.2d at 1275; 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require").

Plaintiff also claims that the RFC failed to take into account limitations and severe pain resulting from her "bilateral knees DDD."  (Doc. 17 at 33.)  To the extent that Plaintiff is arguing that the ALJ failed to account for the pain and functional limitations associated with her *degenerative joint disorder of the bilateral knees*, this argument is not persuasive.  In formulating Plaintiff's RFC, the ALJ expressly considered Plaintiff's degenerative joint disorder of the bilateral knees, status post arthroscopy, and right knee diagnostic arthroscopy with meniscectomy and "chrondoplasty."  AR 32.  Indeed, the ALJ summarized Plaintiff's diagnostic imaging and testing, along with her meniscectomy, patellofemoral chondroplasty surgery and right knee total arthroplasty.  AR 32.  The ALJ also summarized treatment records following Plaintiff's right knee arthroplasty, along with findings based on physical examinations of her bilateral knees.  AR 32-33.  Further, the ALJ relied upon the objective findings and opinion evidence from the consultative examiner, Dr. Wagner, assigning that opinion great weight.  AR 34, 35.  Critically, Plaintiff has not identified or submitted any medical opinions from a treating or examining physician identifying additional functional limitations not accounted for by the ALJ resulting from Plaintiff's degenerative joint disorder of the bilateral knees.

**C.  Plaintiff's Subjective Complaints**

Plaintiff contends that the ALJ failed to give clear and convincing reasons for rejecting her "pain and limitation symptomology evidence."  (Doc. 17 at 35.)  In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).  First, the claimant must produce objective medical evidence of her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.  *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but discounted her statements concerning the intensity, persistence and limiting effects of those symptoms.  AR 32.  The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

The Court finds that the ALJ provided specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.  As one reason, the ALJ found that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with the objective medical evidence and other evidence regarding the duration and frequency of symptoms.  AR 32, 35. Although lack of supporting medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  In this instance, the ALJ found that Plaintiff's allegations regarding her bilateral knees, right upper extremity and abdominal impairments were not as functionally limiting as alleged, citing medical evidence revealing that Plaintiff could easily get up and out of chair, walk at a normal pace without assistance, and sit comfortably.  AR 35, 826-27.  She also could ambulate unassisted with an antalgic to normal ambulatory ability.  AR 35, 334, 339, 430, 432, 435, 450, 958.  She had good range of motion in the lower and upper extremities, no swelling or inflammation of joints, normal proximal strength, adequate strength and intact motor and sensory.  AR 35, 427 (joints have good range of motion, proximal muscle strength normal), 430, 433, 436, 450, 454, 465 (spine range of motion normal,

muscular strength intact, no edema), 473 (strength 5/5, normal sensation, no edema of extremities), 748, 959 (full range of motion).  The ALJ also considered evidence that Plaintiff had normal abdominal examinations.  AR 35, 426, 429, 432, 435, 450, 454, 462, 465, 747.

As another reason, the ALJ considered that Plaintiff's daily activities suggested that she was more active and capable than alleged.  AR 34.   An ALJ can properly discount a claimant's subjective complaints when the daily activities demonstrate an inconsistency between what the claimant can do and the degree that disability is alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (an ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms"), *superseded by regulation on other grounds*.  The ALJ reasonably determined that Plaintiff's ability to engage in yoga, walking, cycling, cooking, cleaning, dusting, driving, shopping, and performing her own activities of daily living without assistance was inconsistent with her with her allegation that she was precluded from all full-time work.  AR 34-35, 54 (able to drive), 61 (dusting), 433 (walking, yoga), 436 (walking, yoga); 748 (walking, yoga); 826 (cook, clean, drive, shop, perform own activities of daily living, "does some walking and bicycle riding for exercise").

Plaintiff asserts that the ALJ fails to consider her testimony regarding her limited ability to walk and her inability to perform her daily activities on a sustained basis.  (Doc. 17 at 39.)  Even where a plaintiff's activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *Molina*, 674 F.3d at 1113.  Moreover, the ALJ expressly acknowledged that Plaintiff's condition resulted in functional limitations that were considered in the RFC.  AR 35.

Additionally, the ALJ considered that Plaintiff's bilateral knee, right wrist and gastric sleeve issues were treated conservatively with chiropractic care, physical therapy, infusions, corticosteroid injections, and prescribed medication such as Percocet, Cymbalta, methotrexate, Norco, and Motrin. AR 34.  An ALJ is permitted to consider evidence of conservative treatment in evaluating a claimant's subjective complaints.  *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (finding evidence of conservative treatment sufficient to discount claimant's testimony regarding severity of impairment). Plaintiff does not appear to challenge this finding by the ALJ.  Several courts in this circuit have found that similar measures, such as physical therapy, injections, and pain medications constitute

1    conservative treatment.  *See*, *e.g.*, *Azevedo v. Comm'r of Soc. Sec.*, No. 2:19-CV-01073-KJN, 2020

2    WL 5633008, at *7 (E.D. Cal. Sept. 21, 2020) (citing cases noting conservative therapy consisting of

3    physical therapy, anti-inflammatory and narcotic medications, use of a TENS unit, occasional epidural

4    steroid injections, and massage therapy); *see also McMillen v. Berryhill*, No. 1:17-CV-00664-SKO,

5    2018 WL 3769829, at *20 (E.D. Cal. Aug. 7, 2018) (citing cases).  Although the ALJ also noted

6    Plaintiff's surgeries (AR 34), Plaintiff testified that surgery on her right hand was successful and had

7    helped.  AR 52.  Plaintiff's knee surgery also helped her condition and she was treated conservatively

8    thereafter (AR 32, 350 (physical therapy for right knee), 353 (right knee response to physical therapy

9    treatment good, 378).  *See Karen Trejo H. v. Saul*, No. CV 19-7378-JPR, 2021 WL 2808693, at *8

10   (C.D. Cal. July 6, 2021) (finding ALJ properly discounted claimant's symptom statements and

11   testimony as inconsistent with her conservative treatment where conservative medication treatment

12   provided relief after surgery).

13          The Court therefore finds that the ALJ's assessment of Plaintiff's subjective complaints is free

14   of reversible error.  Even if one of the reasons provided could be found inadequate, there are sufficient

15   other reasons provided to support the assessment of Plaintiff's subjective complaints. *See Batson*, 359

16   F.3d at 1197.

17                                      **<u>CONCLUSION</u>**

18          Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial

19   evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court

20   DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.

21   The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Kilolo Kijakazi,

22   Acting Commissioner of Social Security, and against Plaintiff Sandra Faye Nunes.

23

24   IT IS SO ORDERED.

25      Dated:   **August 19, 2021**            /s/ *Barbara A. McAuliffe*

26                                              UNITED STATES MAGISTRATE JUDGE

27

28

                                                    14